**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    WESTERN STATES INSULATORS AND          No. C-11-0175 EMC
     ALLIED WORKERS PENSION PLAN, *et*
9    *al.*,
                                             **ORDER GRANTING PLAINTIFFS'**
10              Plaintiffs,                   **MOTION FOR DEFAULT JUDGMENT**

11         v.                                 **(Docket No. 21)**

12   JENCO MECHANICAL INSULATION,
     INC.,
13
                Defendant.
14
     _____/
15

16         Plaintiffs are Western States Insulators and Allied Workers Pension Plan, Western States

17   Insulators and Allied Workers Individual Account Plan, and Western States Insulators and Allied

18   Workers Health Plan (collectively, "the Benefit Funds"), which are employee benefit plans,

19   maintained for the purpose of providing retirement, health and welfare, and related benefits to

20   eligible participants.  Plaintiffs filed suit against Defendant Jenco Mechanical Insulation Inc.

21   ("Jenco"), asserting claims pursuant to the Employee Retirement Income Security Act ("ERISA"),

22   *see* 29 U.S.C. 1132.  After Defendant failed to respond to Plaintiffs' complaint, default was entered

23   against Defendant on July 25, 2011.  *See* Docket No. 17.  Plaintiffs thereafter moved for default

24   judgment on December 30, 2011.  *See* Docket No. 21.  Having considered Plaintiffs' briefs,

25   accompanying submissions, and oral argument, the Court hereby **GRANTS** the motion for default

26   judgment.

27   ///

28   ///

**United States District Court**
For the Northern District of California

# I.   **FACTUAL & PROCEDURAL HISTORY**

Plaintiffs filed suit against Jenco on January 12, 2011.  *See* Docket No. 1 (Compl.).  In support of their motion for default judgment, Plaintiffs provided evidence to establish the following.

From 1998 to 2000, Plaintiffs established Agreements and Declarations of Trust for pension and health funds.  *See* Docket No. 26 (Ex. 1; Ex. 2).  Under both Trust Agreements ("TAs"), Plaintiffs require signatory employers to "furnish to [Plaintiffs' Trustees] on demand any and all wage records relating to [their] employees which the Trustees shall require in writing."  Docket No. 26 at Ex. 1:§ 5.4; Ex. 2:§ 5.4.  Additionally, signatory employers must make contributions to Plaintiffs as agreed in the collective bargaining agreements ("CBAs") and TAs between the parties. Docket No. 26 at Ex. 1:§ 5.1; Ex. 2:§ 5.1.  On May 31, 2011, Jenco signed a Participation Agreement and accepted the terms of the TAs and CBA.  Docket No. 27 at Ex. 1.  Although Plaintiffs were unable to locate an earlier dated participation agreement signed by Jenco, they provided a copy of Jenco's contribution report, which showed that Jenco had made hourly contributions to Plaintiffs on behalf of four employees who participated in the Benefit Funds beginning in 2005.  Docket No. 34 at ¶¶ 4-5, Ex. 1.  Moreover, Plaintiffs' business manager Rick Marshall ("Marshall") informed Plaintiffs that Jenco's owner "said he thought he had previously signed [an earlier dated] agreement" and that, pursuant to the parties' CBA, Jenco requested workers to complete abatement and insulation work at a U.S. Department of Energy nuclear site and paid benefits for such workers.  Docket No. 27 at 2:1-11; Marshall Decl., No. 33 ¶¶ 1-7.

On January 12, 2011, Plaintiffs filed a complaint under Section 515 of ERISA and sought an injunction requiring Jenco to allow Plaintiffs access to Jenco's records to conduct an audit for the period January 2006 through August 2010.  Compl. ¶ 13.  Moreover, upon the completion of the audit, Plaintiffs would seek to obtain (1) contributions for each hour worked by its bargaining unit employees at the rate and manner specified in the TAs and CBA; (2) contributions measured by the hours worked by subcontractors that are not signatory to the CBA; and (3) attorney fees, court fees, auditor fees, liquidated damages and interest, and any fringe benefit contributions.  *Id.* at ¶¶ 11-17. Plaintiffs allege that Jenco breached provisions of the TAs and CBA by failing to allow Plaintiffs to audit Jenco's records after Plaintiffs submitted a written demand for access to the records.  *Id.* at ¶

2

13. On February 9, 2011, Plaintiffs submitted an affidavit showing proper service of summons and complaint upon Jenco's registered agent, Scott Jenson ("Jenson").  *See* Docket No. 5.

The Court granted both parties' stipulation to extend the time for responding the complaint. *See* Docket Nos. 6; 7.  On July 25, 2011, Plaintiffs requested entry of default against Jenco when Jenco failed to respond to the complaint.  *See* Docket No. 17.  Thereafter, Plaintiffs filed a motion for default judgment by Court, seeking a judgment of mandatory injunction that would require Jenco to provide Plaintiffs access to its records for audit.  *See* Docket Nos. 21; 25.

## II.   DISCUSSION

A.    Adequacy of Service of Process

As a preliminary matter, the Court must first "assess the adequacy of process on the party against whom default is requested."  *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  According to Federal Rule of Civil Procedure 4(h)(1), a corporation may be served "in the manner prescribed for individuals by subdivision (e)(1)," Fed. R. Civ. P. 4(h)(1), and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located."  Fed. R. Civ. P. 4(e)(1).

Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) to the person designated as agent for service under certain provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process."  Cal. Code Civ. P. § 416.10(a), (b).

In the instant case, service of process was proper.  Plaintiffs filed a signed affidavit of service indicating the summons and complaint were served on February 9, 2011.  *See* Docket No. 5.  An affidavit indicates Plaintiffs served Jenson, a registered agent for Jenco.  *Id.*  On January 17, 2012, Plaintiffs filed a proof of service for the motion for default judgment against Jenco.  *See* Docket Nos. 24; 28.  Therefore, the Court concludes that service on Jenco was proper.

///

///

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

B.     _Eitel_ Analysis

As noted above, the Clerk entered default against Jenco on July 21, 2011.  Docket No. 17.
After entry of default, a court may grant a default judgment on the merits of the case.  *See* Fed. R.
Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one."
*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court may consider the following factors
in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of
> money at stake in the action, (5) the possibility of a dispute concerning
> material facts, (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure
> favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered
in this case, the general rule is "the factual allegations of the complaint, except those relating to the
amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18
(9th Cir. 1987).  *But see* Fed. R. Civ. P. 55(b)(2) (providing a court may conduct hearing when, to
enter or effectuate a default judgment, it needs to establish the truth of any allegation by evidence).

In the instant case, many of the *Eitel* factors weigh in favor of default judgment.  First, if the
motion for default judgment were to be denied, then Plaintiffs would likely be left without remedy.
*See Walters v. Shaw/Guehnemann Gorp.*, No. 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7
(N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them
without a remedy.  Prejudice is also likely in light of the merits of the claims."); *Pepsico, Inc. v. Cal.
Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment
is not granted, Plaintiffs would likely be without other recourse for recovery.").  Second, the remedy
sought by Plaintiffs is reasonable because it is limited to an injunction requiring defendant to submit
to a financial audit.  *See Board of Trustees of the Laborers Health and Welfare Trust Fund v. Perez*,
No. C-10-2002 JSW, 2011 WL 6151506, at *8 (N.D. Cal. Nov. 7, 2011) (finding plaintiffs' request
for a financial audit a reasonable remedy when defendant failed to respond to the complaint).  Third,
because Jenco has failed to answer the complaint, there is little to suggest a possibility of dispute
regarding material facts.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW,

4

**United States District Court**
For the Northern District of California

1  2006 WL 2527776, at *5 (finding plaintiffs' well-pleaded allegations as true and found no

2  possibility of dispute about the material facts when defendant failed to respond to plaintiffs'

3  complaint).  Finally, it is unlikely Jenco's default was due to excusable neglect, as Plaintiffs

4  properly served not only the complaint but also the notice of motion for default judgment.  *See*

5  Docket Nos. 5; 24; 28.  However, Plaintiffs still received no response.

6  　　　　Most importantly, Plaintiffs have adequately stated a claim for relief.  Although they have

7  not submitted the CBA governing January 2006 through August 2010, Plaintiffs provided (1) a

8  declaration from Marshall stating that, pursuant to the CBA, Jenco requested workers to complete

9  abatement and insulation work at a U.S. Department of Energy nuclear site and paid benefits for

10  such workers; and (2) contribution reports showing that Jenco has made hourly contributions to

11  Plaintiffs for four employees since 2005.  No. 32 at 2:1-8; Marshall Decl. ¶ 2-7; No. 34 at ¶ 4-5, Ex.

12  1.  Jenco would not have made these previous contributions if it did not intend to bind itself to the

13  CBA and TAs governing those contributions.  *See Santa Monica Culinary Welfare Fund v. Miramar*

14  *Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (holding that although defendant was not a

15  signatory employer to the trust agreement, the fact that defendant made contributions to plaintiffs

16  "necessarily follows that [defendant] is an employer under the [trust agreement]" because "[t]he

17  [trust agreement] contemplates that contributing employer be either signatories or contributors under

18  a collective bargaining agreement and be bound to the terms of that [trust agreement].").

19  Additionally, Plaintiffs' complaint allege that they submitted a written request to Jenco for its wage

20  records, and their motion to continue case management conference states that Jenco had contacted

21  Plaintiffs to schedule a mutually convenient time for audit.  Compl. ¶¶ 13; Docket No. 10.  Taking

22  into consideration Jenco's previous contributions, the fact that Jenco signed a Participation

23  Agreement (binding it to both the CBA and TAs) from 2011 on, Docket No. 27 at 2:1-11, Ex. 1, and

24  Jenco's apparent concession that it was amenable to an audit, the Court concludes that Plaintiffs are

25  entitled to a default judgment.  Accordingly, the Court now turns to the issue of injunctive relief.

26  C.　　Injunctive Relief

27  　　　　Plaintiffs seek an injunction requiring Jenco to provide access to its records for the period of

28  January through August 2010 in order for Jenco to audit and calculate delinquent contributions.  *See*

1   Docket No. 1 at ¶ 17; No. 21 at 4:22-25.  ERISA authorizes courts to grant "such other legal or

2   equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  Such relief may

3   include an injunction ordering the defendant to submit to an audit.  *See Perez*, 2011 WL 6151506, at

4   *15 (granting plaintiff's request for mandatory injunction requiring defendant to submit to a

5   financial audit to calculate delinquent contributions under ERISA).  ERISA also gives trustees of

6   benefit plans the right to review the records of employers contributing to such plans.  *Cent. States,*

7   *Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985).  Additionally,

8   pursuant to Articles V, Sections 5.4 of the TAs, Jenco is required to "furnish to [Plaintiffs] on

9   demand any and all wage records relating to [Jenco's] employees which the Trustees shall require in

10  writing."  Docket No. 26 at Ex. 1, § 5.4; No. 26 at Ex. 2, § 5.4).

11          In the instant case, Jenco has not complied with the TAs or ERISA and has remained

12  unresponsive throughout the judicial process.  As discussed above, Plaintiffs are entitled to audit

13  Jenco's financial records upon written request pursuant to the TAs.  Docket No. 26 at Ex. 1:§ 5.4;

14  Ex. 2:§ 5.4.  Plaintiffs filed such a written request for Jenco's records, to which Jenco failed to

15  respond.  Compl. ¶ 13.  Hence, the Court finds it appropriate to grant Plaintiffs' requested injunctive

16  relief and orders Jenco to produce all books and records necessary to conduct an audit under the

17  terms of the TAs and CBA for the period of January 2006 through August 2010.  *See Perez*, 2011

18  WL 6151506, at *8 (granting plaintiffs' request for a mandatory injunction requiring defendant to

19  submit to a financial audit when defendant failed to answer plaintiffs' ERISA action).

20                      **III.   CONCLUSION**

21          For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for default judgment

22  and orders Jenco to produce all books and records necessary to conduct an audit under the terms of

23  the TAs and CBA for the period of January 2006 through August 2010.  Once judgment in this case

24  is entered, however, Plaintiffs may be barred by the doctrine of res judicata from recovering

25  additional delinquent payments for the relevant time period that they may discover they are owed

26  through an audit.  *See Int'l Union of Operating Engineers v. Karr*, 994 F.2d 1426, 1430 (9th

27  Cir.1993).  *But see Bd. of Trustees of Laborers Health v. Perez*, C 10-02002 JSW, 2011 WL

28  6149518, at *1 (N.D. Cal. Dec. 12, 2011) (entering judgment, closing the file, and retaining

**United States District Court**
For the Northern District of California

United States **District Court**
For the Northern District of California

1  jurisdiction to enforce mandatory injunction and to entertain further motion for money judgment).

2  Therefore, to protect Plaintiffs' rights and provide Plaintiffs adequate time to conduct an audit,

3  judgment shall not enter until ninety (90) days after the date of this order.  Plaintiffs may request

4  additional time.  If Plaintiffs fail to do so, the Court will enter judgment ninety (90) days after the

5  date of this order and close the file.

6         This order disposes of Docket No. 21.

7

8         IT IS SO ORDERED.

9

10 Dated:  April 3, 2012

11                                                   _____

12                                                   EDWARD M. CHEN
                                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7